Judge Noonan and I are pleased and honored to welcome the Honorable Jeffrey S. White, United States District Judge for the District of Northern California, who has consented to sit with our court by designation today. We'll hear the cases in the order that they're listed. You need not ask for leave to divide your time between argument in chief and rebuttal or between counsel on the same side. Just manage your own time, do as you wish with it in the way of dividing it up. When the light turns red and the numbers are still going, that doesn't mean you have that much time left. It means you're that much over the time. The first case is MURUGAMORTHY v. ASHCROFT. Counsel. Good morning, Your Honor. This case basically is about a misreading of the airport statement of the arriving refugee. There's recently been, the court decided in December, another case, Arulam-Palem, in which the same judge with the same series of cases had misused the airport statement. In this case, Do you want to give us the reference on that? Yes, that's Arulam-Palem. It's number 02-71267. Is that in your brief or not? No, sir. It's a new one, and I didn't. I think you ought to give us an opposing counsel to cite, so we all have it, but after the argument. All right. I'm sorry I didn't cite it beforehand. You know, even if, I'm not aware of that case, but even if we did say that that judge made a mistake in another case, I don't get how you could forget being tortured. I mean, one version of the facts, he has three arrests and torture, and the other version of the facts, he has one arrest and no torture. And that's a lot to forget. How do you forget that? No, I don't think there's an indication that he forgot it, Your Honor. When he's questioned about this on the record, he says, well, I told it generally. The INS attorney tried to say, well, he conceded, not counsel here, but on the record. He said only once, and Murugamur's attorney said, no, he didn't say only once. And if you look at the actual airport statement, which is, excerpts of record, page 13 through 15, that's the administrative record, pages 288 and 290. Could you give it a number again in the excerpt? It's what? Excerpts pages 13 and 15. What's the administrative record? 288 and 290. OK. At the bottom of the – well, at the top of page 13, the question described all the reasons you left. I'm sorry. The only thing he got around to answering, and that was the bombing, his mother's losing her leg because of a shelling or a landmine, he didn't forget. Have you ever been confined in a jail or prison? No, only at the camp by the Army. Well, Your Honor, that's quite true. And then he, in the description of the Army, it's just one time. The Army took you, too? Yes. In the camp, they fill a pipe with sand and hit us with it and then just let us go after three days. Sometimes they make all the young kids stay in the area for the whole day just to harass us. That's all I could find, or at least that's all I marked when I read this. Yes, sir. But that's a very condensed statement. Is there more? No, but the fact that he says a few days and then he says also sometimes for a day, he did describe being arrested for a day once. Where are you reading from? The last line of page 13 of page 288, for a whole day. And then in the, for a whole day, you're taking it out of context. He's not saying they arrested me for a young day, he's saying sometimes they make all the young kids stay in an area for the whole day just to harass us. But in his second arrest, which we discussed in the facts on page 7 of the brief or page 71 of the administrative record, his second arrest was for a day. So the fact that he mentioned a day, being detained for a day at a time, there's a lot that's unsaid. And the context of this statement doesn't suggest that he was forgetting something. It's a very condensed narrative. Wasn't there something more than the airport statement, the uncle's letter where only one arrest was mentioned? Doesn't that corroborate the notion of just one arrest? Well, the uncle knew of his being arrested and tortured, but the fact that the uncle didn't know the whole story or didn't refer to it, I suppose he didn't know it. If the kid reaches a point where he's desperate to get out, they call a relative that has the means to get the money for this. They don't necessarily tell the whole story. Is there anything in the record that indicates that the uncle was not aware of all of the circumstances when he wrote the letter? Except that he didn't mention other circumstances. He wasn't a witness or anything. All we have is that letter. And the last question, well, next to last question, do you have anything else to add? Not as long as I'm not returned to Sri Lanka, which is the whole premise of this interview. If he didn't express a fear of return, he would have been removed immediately without this interview. The fact that he had some hesitancy or resistance to returning and expressed a fear of returning, he got this interview. Then once he got a certain showing, then he got referred to the asylum officer for the credible fear interview. So the premise is if you show me something, we'll refer you to the asylum officer. And he says, if I don't have to be returned to Sri Lanka, I, you know, I don't need to add to this right now. And the line of questioning, it's discontinuous. At the top of page 13 or page 288, describe in detail the reasons you left. Before he finishes, he didn't get to talking about an arrest. The officer says, how did you get out of Sri Lanka? Who made the arrangements? And you go through most of the fact findings about who the smugglers are, because the INS has a main interest in trying to stop the smuggling operations. So there may very well be other information that he gave about the smuggling that's not even recorded here. It may be in the internal files and never presented to the Court. But the argument you're making is very cogent. But when represented by counsel at the hearing when he was, when the petitioner was cross-examined, he was given an opportunity to give the explanation you're giving and what he said was that he had only answered generally and that he had made a mistake for which he was sorry. So even when he had counsel and the opportunity to correct the record and add the explanation that you're adding, he didn't do it, did he? Well, I think that was an accurate explanation. He did answer generally. He did say, I've been arrested, I've been tortured. And if I can find it, that's on page like 85 to 88 of the excerpts of record or pages 108 to 110 or 111 of the administrative record. Later, INS counsel is arguing that he admitted only once and the attorney says, no, it wasn't only once. I'm sorry. I don't know if I can find that right now. You know, so far we've been talking as though our job is to read this and see whether there's a way he could be telling the truth about this awful torture with his toenail and everything. But really the standard of review is whether there's substantial evidence on the record as a whole that supports the IJ's adverse credibility finding, which itself has to articulate specifics. And it did. And even if we think the IJ was wrong, I think if there's substantial evidence on the record as a whole that supports his finding, we're bound by it. Is that not correct? That's correct. I would say that the airport statement, the way this is presented, is not substantial evidence. It's not designed to establish an asylum claim. It's designed just as a very threshold. Does this fellow express some kind of fear that might be worth listening to? And then it gets referred to the credible fear interview. So I don't think this can be taken as substantial evidence of the elements of his claim, except that it was he's afraid of the Army. And these detentions are not arrests like by police with a warrant or with a complaint They're informal. They're never reported, never official. And they can go on for quite a long time. So sometimes the word arrest may be answered negatively, but this has happened so much. All the Sri Lankan cases have had the same type of facts. Are they under oath? Yes. Yes. Thank you, counsel. Good morning. May it please the Court. My name is Marion Guyton. I'm with the U.S. Department of Justice and I'm representing the Respondent, the Attorney General, in this matter. Petitioner focuses on the airport statement as though that was the only discrepancy. But as Judge White noted in his question to Petitioner's counsel, the immigration judge also focused on the fact of the letter from Petitioner's uncle, which only mentioned the one arrest. I think the way the I.J. put it was that the uncle was not aware of the new version? Yes, that's correct. The government feels that these discrepancies in Petitioner's story are critical to the basis for his claim. And while these weaknesses do not necessarily preclude a finding of truthfulness, it was certainly open to a reasonable fact finder to conclude, as the immigration judge did in questioning the immigration judge's story. Could I pursue the uncle's letter for a minute? Tell me about that. When was that written and where is it written from? The letter was from Canada. The uncle lives in Canada. Canada? Canada. Canada, all right. This uncle had been in Sri Lanka and the evidence to reckon indicates that the Petitioner had worked for his uncle in Sri Lanka, but the letter was written subsequent. And was it written, was the uncle in Sri Lanka at the time of the army took the Petitioner? No, he was not. He was not a recipient witness. He was just reporting random hearsay? He was reporting based on what Petitioner had told him. Based on his familiarity with Petitioner's story. Tell me where we are in the record of the uncle's letter. The uncle's letter is in page 248 of the administrative record. And those are the numbers at the bottom? Or is there some other set of numbers? The numbers at the bottom, 000248. 248, all right. They seem to dot around. They go 233 and then I get 182. Why is that? And then they go up and they go down. And I get 204. Is this right at the very end? It is at the very end. It's with the... I get 226 is what I'm saying. I guess there are two things there. It's just before the State Department reports that the service... I have two sets of... One I have is called the record and then the administrative record. Did you file the administrative record? Excuse me, did you file... The administrative record was filed by the Executive Office of Administrative... Oh, okay. So that's fine. I heard my nephew was arrested. What kind of a... You know, if you were in any court proceeding, how much weight would you put on this? I heard the guy was arrested. But, Judge Neal, this is not taken alone. The immigration judge looked at this and juxtaposed this with the airport statement. And here in two cases there was no mention of a second or third arrest. The airport statement is a kind of, you know, a very unpersuasive little thing that's established that he had some basis to be heard. It wasn't a case. And I frankly don't see any conflicts at all. But let's not look at them standing alone. Let's stay with the uncle's letter, because you say this bolsters it. My brother got scared and he called me. I would find this... If this was offered as evidence to support his claim, wouldn't you be the first one to say it's very unpersuasive? I mean, how can you use this as a test of credibility when it's the most blatant kind of hearsay? But it was the immigration judge's determination that these factors, combined with the airport statement, led him to believe that... Please don't use general language. We've got this hearsay statement by an uncle in Canada, something he heard sometime, I don't know when. And you've got the flimsy little interview with the assignment. Those are the two factors you're relying on to show he's a liar. How do you do that? Well, the immigration judge who had the... But is it substantial? It seems to me utterly insubstantial. What the government's position is, even though at this court we're reviewing this matter de novo, it may come up with a different result. No, no. We're looking for substantial evidence. What's the substance of this half-baked hearsay and the preliminary interview at the airport? The argument of the government is that the immigration judge's adverse credibility determination was based on his determination that these two factors, what the immigration judge noted, felt that they were critical to the basis of his claim, that he was arrested more than one time. And the absence of a statement at the airport and an absence of any reference in the uncle's letter led the immigration judge to conclude he doubted the credibility. I'm sure you're familiar with the law of the circuit on credibility findings. Yes, I am. We don't let somebody just say to a petitioner, you're incredible. No. You have to have... I'm familiar with Glee, and there is a nexus. The immigration judge, this is not a case in which there was no nexus. The immigration judge showed a nexus between his finding and the evidence. And under the deferential standard of review here, that determination by the immigration judge should be accorded substantial deference. Counsel, how did the uncle's statement get into the record? Was it submitted by the petitioner? No, it was submitted by the service. And how did the service get the statement? I guess it's addressed to the immigration judge. I'm not familiar with that case, Congressman. What I'm trying to find out is, is the uncle's letter a letter that the petitioner caused to be written in support of his opinion? That's correct. That's correct. And this was in the statement. What the uncle's letter writes is something that the petitioner caused to be submitted in support of his petition. In support of his petition. And it's the hearsay is admissible in these proceedings. Is that right? That is correct. And it's the uncle's statement of what he was heard about his nephew's travails in Sri Lanka. That's correct. That is hearsay which is admissible, yes. So what we could read it in two ways. One is that the uncle heard the worst of it, a three-day arrest, and then they tell him quit coming back to the army camp. And the other way to read it is that the uncle did not hear the worst of it about the torture and the toenails and the repeated arrests. It is subject to a reasonable interpretation either way. And in this case, I'd like to note that the petitioner had the opportunity to refute or try to discredit the statements, but at no point did he indicate that this letter was not valid or the uncle's statements were incorrect. With respect to the airport statement upon which the government puts a lot of stress, how do you square the I.J.'s consideration of that with the same case at 292 Fedford 1017 where the court at page 1021 said, quote, requiring evidentiary detail from an airport interview not only ignores the reality of the interview process, but would in effect create an unprecedented pre-asylum application process, unquote. How do you square that case with the I.J.'s consideration of the airport interview? Well, that's a general statement made by the Third Circuit. I believe that the brief adequately dealt with that in distinguishing. No, this was the Ninth Circuit. Oh, the Ninth Circuit. This is the same case. I would distinguish that by indicating that what that same case was referring to was the general interviews, airport interviews. In this case specifically, the interview was tight. There was a Tamil interpreter, and the ambiguity that existed in Singh and in the Third Circuit cases was not in this case. This case, the letter, the questions were tight, and there was an interpreter, and the ambiguity was not present as in those other cases. Was there a translator problem in Petitioner's case as there was in Singh? Singh, the interpreter and the Petitioner spoke different languages, evidently. That caused some of the ambiguities that ---- I imagine it would. In this case, there were no ambiguities. And the government's position is that those cases, Singh and the Third Circuit cases are distinguishable. I don't care about Third Circuit, just Singh. Right. So the distinction is that there the translator and the Petitioner spoke different languages. Here they spoke the same language? That's correct. Thank you, Counsel. Thank you.
judges: Noonan, Kleinfeld, White